In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 12-3446, 14-2007, 14-3153

PHILOS TECHNOLOGIES, INC.,

*Plaintiff-Appellant*,

*v.*

PHILOS & D, INC., *et al.*,

*Defendants-Appellees*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 7240 — **Milton I. Shadur**, *Judge*.

_____

ARGUED JUNE 1, 2015 — DECIDED SEPTEMBER 22, 2015

_____

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. This lawsuit involves a complicated transaction—or set of transactions—among several related companies, most of which are based in the Republic of Korea. At its core, the lawsuit alleges that the defendants, Korean company Philos & D, Inc. (P&D), and Korean citizens Don-Hee and Jae-Hee Park, unlawfully retained equipment that plaintiff Philos Technologies, Inc. (Philos Tech), had sent

to P&D as part of a business deal. Although we part company with the district court's reasoning, we agree with that court's conclusion that it lacked personal jurisdiction over the defendants. We also affirm the district court's denial of Philos Tech's motion asking the court to vacate its judgment on account of the Parks' alleged fraud. Finally, although we understand the district court's frustration with Philos Tech, we conclude that its imposition of sanctions on that company cannot stand in light of the many legal and factual uncertainties involved in this case. We therefore vacate the court's sanctions order.

**I**

**A**

An ordinary commercial transaction underlies this dispute. Philos Tech sent some equipment to Korea for delivery to P&D in connection with an alleged joint venture between the two companies. Philos Tech alleges that P&D, along with Don-Hee and Jae-Hee Park, unlawfully converted that equipment. Because the chief issue before us concerns personal jurisdiction, we will recount not only the actions related to the alleged conversion, but also the events leading up to the alleged agreements between Philos Tech and P&D, as those events all bear on the question whether personal jurisdiction can be sustained in an Illinois court.

Philos Tech is an Illinois corporation; Philos Ko (who is also known as Jongho Ko) is its chairman. Philos Ko is also the chairman of PLS Tech Korea Co., Ltd. (PLST), a Korean company that, while not a party to this litigation, plays an important role in our story. Philos Tech and PLST are closely intertwined: Philos Ko's wife, Angela Ko (also known as

Haewon Park), is the president and CEO of PLST. Philos Ko's son, Sam Ko, is the president and CEO of Philos Tech. P&D, one of the defendants here, is a Korean corporation. (Its articles of incorporation appear in the record; they establish that P&D is the equivalent of a U.S. corporation.) The formation of P&D is a disputed topic, which we explore below. For now it suffices to say that the two Parks (Don-Hee and Jae-Hee), both Korean citizens and both defendants in this suit, were involved in P&D's incorporation.

Don-Hee Park visited Illinois in May 2007. While in Illinois, he began engaging in conversations with Philos Tech about the formation of a joint venture. (In its original complaint, Philos Tech alleged that these conversations did not begin until September 2007; this is the first of several such contradictions.) P&D and the Parks (collectively Defendants), on the other hand, urge that Don-Hee did not negotiate any details of a potential joint venture while in Illinois. They contend instead that Don-Hee's interactions with Philos Tech during his trip were purely for him to learn more about Philos Tech's work and technologies.

On December 20, 2007, PLST (the Korean company also chaired by Philos Ko) and P&D executed two written agreements. The first agreement, which we call the "Joint Venture Agreement," provisionally established a joint venture between PLST and P&D. In the second, to which we refer as the "Equipment Agreement," PLST agreed to provide P&D with certain equipment. The Equipment Agreement (between two Korean companies) contains a forum selection clause designating Korea as the forum to resolve disputes.

Philos Tech asserts that on the same day the written agreements were executed—December 20, 2007—it had a

phone meeting with the Parks. In that meeting, the parties decided to rescind and replace the Joint Venture Agreement between PLST and P&D on which the ink was barely dry with an oral agreement essentially substituting Philos Tech for PLST. Under the revised agreement, Philos Tech would take PLST's place in the joint venture and provide the equipment PLST had promised to supply under the Equipment Agreement. (Once again, the earlier complaint paints a different picture: in it, Philos Tech did not mention the written agreements with PLST; instead, it merely asserted that during a "meeting" on December 20, 2007, it and the Parks had agreed to form a joint venture between Philos Tech and P&D, and that Philos Tech's role would be that of equipment supplier to P&D.) Defendants deny the existence of any oral agreement superseding the December 20 written agreements; they maintain that P&D's joint venture partner has always been PLST, not Philos Tech.

Complicating matters further is the fact that P&D's Korean articles of incorporation, which took effect on February 25, 2008, state that P&D's founders are Don-Hee Park and Philos Tech. Defendants' explanation for the references to Philos Tech in the articles and other documents is that they were a smokescreen designed to subvert Korea's foreign investment law. See Foreign Investment Promotion Act (Republic of Korea), enacted Sept. 16, 1998, available at http://legal.un.org/avl/pdf/ls/Shin_RelDocs.pdf (visited on Aug. 20, 2015, as were all websites cited in this opinion). The references falsely represented P&D as a foreign direct investment company so that P&D could obtain government benefits under that Act. The real agreement, Defendants say, was between the two Korean companies (P&D and PLST), but the parties falsified certain documents and created the

illusion that the Illinois-based company Philos Tech was contributing to the Korean economy. They assert that P&D was not actually receiving any genuine foreign direct investment from the Illinois company in the form of equipment contributions; the equipment instead made a round trip from Korea to Illinois and back again with no value-added at the Illinois end. Philos Tech denies that this was the case. It maintains that the February 2008 articles of incorporation are legitimate and that Philos Tech was making genuine transfers of funds and equipment to its Korean joint venture.

Don-Hee Park visited Illinois again in May 2008. (The district court found that he came only once, in 2007, but the parties agree that he also made a trip in 2008.) Philos Tech asserts that it and Don-Hee finalized the details of their joint venture at this time. Defendants again deny that any negotiations took place during this visit. They concede that Don-Hee received an invoice from Philos Tech while he was in Illinois, but they say that they did not respond to it because they had entered into the agreements with the Korean company PLST, rather than Philos Tech.

On August 18, 2008, PLST sent P&D a letter in which it stated that it was canceling agreements made on December 20, 2007. Once again, it is unclear what was happening. Philos Tech takes the position that this letter purported to cancel solely the Equipment Agreement—and not the Joint Venture Agreement—because the Joint Venture Agreement already had been superseded by Philos Tech's December 20 oral agreement with the Parks to form the joint venture between itself and P&D. Defendants argue that the letter canceled both the Joint Venture Agreement and the Equipment Agreement between P&D and PLST, because (they say) there

was no oral agreement with Philos Tech and the joint venture between P&D and PLST had remained in force throughout 2008. The parties presented the district court with competing translations of these documents, all of which are in Korean.

There were transfers of funds and equipment between Korea and Illinois in connection with these machinations, but the purpose and details are unclear. The Parks transferred approximately 200 million won to PLST (approximately US$160,000 at the time, see http://www.exchange-rates.org/Rate/KRW/USD/12-31-2008); that money was later transferred to Philos Tech, which eventually sent either funds or some other kind of investment back to P&D. PLST sent equipment from Korea to Philos Tech, and Philos Tech later sent equipment back to Korea. Defendants maintain that the equipment was largely unchanged during its time in Illinois, and that these transfers were part of the foreign direct investment scam. Philos Tech insists that the equipment PLST sent consisted of component parts, which it assembled into completed equipment and returned to Korea.

While this lawsuit has been underway, related litigation has been wending its way through the Korean courts. Korean courts have ruled that Philos Tech, not PLST, was the joint venture partner of P&D. More recently, both Don-Hee and Jae-Hee Park were convicted in Korea for perjury in relation to statements made during prior court proceedings; Jae-Hee Park's conviction was then overturned on appeal, and it is on appeal to the Korean Supreme Court. (The Korean court of first instance found that Jae-Hee committed perjury when she stated that P&D's joint venture partner never changed from PLST to Philos Tech.) The Korean courts also deter-

mined that Don-Hee Park lied when he said that he had never seen P&D's Articles of Incorporation before; that conviction was affirmed on appeal.

B

Philos Tech filed this lawsuit in the Northern District of Illinois in December 2008, alleging that the Defendants had unlawfully converted its property. The complaint asserts that Defendants had agreed to increase Philos Tech's shares of P&D after Philos Tech sent additional equipment to P&D in Korea, but that Defendants reneged on this agreement. This prompted Philos Tech to demand the return of its equipment. Defendants refused to comply and, according to Philos Tech, wrongfully retained the equipment.

Defendants did not appear in the Illinois court to answer the complaint. The district court thus granted Philos Tech's motion for default judgment and awarded damages. After Philos Tech attempted to enforce this judgment in Korea, Defendants filed a motion to vacate the judgment under Federal Rule of Civil Procedure 60(b)(4), asserting that the Illinois court's judgment was void for lack of personal jurisdiction. The district court concluded that the request was untimely, but we reversed that judgment in *Philos Technologies, Inc. v. Philos & D, Inc.*, 645 F.3d 851 (7th Cir. 2011). Defendants then renewed their motion to vacate.

The district court held an evidentiary hearing to determine whether it had personal jurisdiction over Defendants. At the hearing, Defendants called Sam Ko and Sung-Hyun Nam, a former PLST vice-president. Philos Tech presented no witnesses. Relying on the live testimony, affidavits from the Parks, and other documentary evidence, the district

court vacated the default judgment and dismissed the com-
plaint for lack of personal jurisdiction. It largely credited De-
fendants' version of the facts. It found, for example, that
Philos Ko had contacted the Parks in October 2007 to pro-
pose a joint venture. It determined that Don-Hee Park had
not engaged in any negotiations during his May 2007 trip to
Illinois and that he had not come to Illinois in May 2008 at
all. It rejected Philos Tech's contention that the written
agreements of December 20, 2007, were rescinded and re-
placed with an oral agreement between Philos Tech and the
Parks; instead, the court concluded, the joint venture had
always been between the two Korean companies, P&D and
PLST. The court criticized what it viewed as the "sham
transaction" in which P&D was designated as a foreign di-
rect investment company; it took the position, however, that
it did not need to wade into the details of this potential prob-
lem under Korean law in order to determine whether it had
personal jurisdiction over Defendants. Finally, the court
opined that Philos Tech's claim was really one for breach of
contract rather than conversion, and it concluded that even if
it were to believe that Philos Tech manufactured the equip-
ment in Illinois as part of some sort of agreement with P&D,
these facts still were insufficient to confer personal jurisdic-
tion over Defendants. They simply bought a product from
an Illinois company, the court reasoned, and this action does
not constitute purposeful availment of the benefits of Illinois
law.

After the court's ruling, Defendants filed a motion for
sanctions against Philos Tech and its counsel under Federal
Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The district
court imposed sanctions pursuant to Rule 11 in the amount
of $778,489.72 against Philos Tech, finding that Philos Tech

had lied in order to demonstrate that the court had personal jurisdiction over the defendants. The district court also thought that Philos Tech had falsely claimed that it had a meeting with the defendants on December 20, 2007, and the court pointed to Philos Tech's failure to discuss the written agreements with PLST in its complaint and to the other changes in its story.

Philos Tech later filed a motion for relief from the judgment under Federal Rule of Civil Procedure 60(b)(3) (fraud by opposing party), (b)(6) (catch-all), and (d)(3) (fraud on the court). It argued that the recent Korean convictions of the Parks for perjury in connection with statements regarding the joint venture were grounds for vacating the judgment, because those convictions showed that the Parks had lied to the court about the nature of the joint venture. The district court denied the motion, noting that the Korean judgment postdated its own judgment and reasoning that its prior determination of the facts was "not dependent on the truthfulness or falsity of the Parks' testimony."

Philos Tech appealed the district court's orders vacating the court's previous default judgment, imposing sanctions, and denying its Rule 60 motion. The defendants cross-appealed the district court's denial of sanctions against Philos Tech's counsel, but we later dismissed the cross-appeal upon the joint motion of the parties. See FED. R. APP. P. 42(b). The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2). (The parties are diverse: Philos Tech is an Illinois corporation with its principal place of business in Illinois; P&D is a Korean corporation with its principal place of business in that country; and Don-Hee and

Jae-Hee Park are citizens of Korea.) We have appellate juris-
diction pursuant to 28 U.S.C. § 1291.


## II

Philos Tech first focuses on the district court's grant of the
Defendants' motion under Rule 60(b)(4), which provides re-
lief from final judgment if a judgment is void for lack of per-
sonal jurisdiction. Although we usually review a grant of a
Rule 60(b) motion for abuse of discretion, the court's resolu-
tion of the legal question about the existence of personal ju-
risdiction is subject to *de novo* review. See *In re Chinese-
Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 584 (5th
Cir. 2014); *be2, LLC v. Ivanov*, 642 F.3d 555, 557–58 (7th Cir.
2011); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th
Cir. 1986) (if district court lacked jurisdiction it was a *per se*
abuse of discretion to deny the Rule 60(b)(4) motion). Factual
findings related to the personal-jurisdiction issue are re-
viewed for clear error. See *In re Chinese-Manufactured Dry-
wall*, 742 F.3d at 584. On a Rule 60(b)(4) motion, the defend-
ant bears the burden of proving the court's lack of personal
jurisdiction. See *Bally*, 804 F.2d at 401.

### A

Philos Tech begins with a procedural complaint about the
scope of the hearing that the district court held to determine
its jurisdiction over Defendants. It contends that because the
jurisdictional and merits determinations were intertwined,
the court should have held a "full-blown" hearing, before
which Philos Tech could have conducted discovery and at
which it could have called and cross-examined more wit-
nesses. Because, as Philos Tech claims, the hearing was more

limited and the court relied on the affidavits of the Parks (who did not testify at the hearing), Philos Tech asserts that it was required only to make out a *prima facie* case of jurisdiction. Furthermore, it asserts, the court was required to construe all factual disputes in its favor.

If material facts about personal jurisdiction are in dispute, the court "must hold an evidentiary hearing to resolve them." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Until that hearing is held, "the party asserting personal jurisdiction need only make out a *prima facie* case." *Id.* In some circumstances, particularly when the court is required to assess credibility in order to resolve factual disputes, the court may be required to allow either cross-examination of witnesses or pre-hearing discovery if a party so requests. See *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992).

The problem with Philos Tech's position is simple: the district court never prohibited pre-hearing discovery or live testimony, and Philos Tech never asked for either opportunity. Philos Tech did not call the Parks (or anyone else) as witnesses, in spite of the fact that Defendants presented live testimony. The court was not obliged to divine from Philos Tech's silence exactly what discovery it wanted to undertake and which live witnesses it wanted. A district court may conduct an evidentiary hearing to determine personal jurisdiction as long as "both sides have the *opportunity* to present their cases fully." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (emphasis added). Both Philos Tech and the defendants had such an opportunity. Philos Tech's failure to take advantage of it was not the court's fault and casts no cloud on the court's handling of the hearing.

B

Philos Tech's primary argument is that the court erred when it found that it lacked personal jurisdiction over Defendants. Though we affirm the district court's conclusion, we approach this issue from a different perspective, focusing on Defendants' contacts with Illinois rather than on the complicated relationships between the parties and non-party PLST.

District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located. See *Hyatt*, 302 F.3d at 713. The district court here properly looked to Illinois's long-arm statute, which provides that the Due Process Clause of the Fourteenth Amendment sets the outer boundary of the personal jurisdiction of its courts. See 735 ILCS 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). We have concluded that normally there is "no operative difference" between Illinois constitutional and federal constitutional limits on personal jurisdiction. *Hyatt*, 302 F.3d at 715 (determining that even though these standards "hypothetically might diverge," the two are for most purposes one and the same); see also *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990) (Illinois Constitution requires "[j]urisdiction … to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois"). None of the parties before us has suggested that there is any material divergence between the state and federal standard for our case;

we therefore turn to the familiar federal due-process principles to resolve the issue.

Under the Fourteenth Amendment's Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant must have deliberately established these contacts, or, in other words, he must have purposefully availed himself of the forum state, "'such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). It is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be "with the forum State itself, not … with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Standing alone, the fact that a foreign party has formed a contract with an in-state party is often insufficient to supply the minimum contacts required by the Constitution. *Burger King*, 471 U.S. at 478. Other links, such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may demonstrate that the defendant has purposefully availed itself of the forum. *Id.* at 479; see also *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277–78 (7th Cir. 1997). Illinois courts use

a multi-factor test for determining whether personal jurisdiction exists in these types of situations. They consider "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Estate of Isringhausen ex rel. Isringhausen v. Prime Contractors & Assocs., Inc.*, 883 N.E.2d 594, 600–01 (Ill. App. Ct. 2008).

While there are two branches of personal jurisdiction theory—general and specific—only the latter is relevant here. For a court to exercise specific jurisdiction, the lawsuit must "result[] from alleged injuries that 'arise out of or relate to'" the defendant's contacts with the forum. *Burger King*, 471 U.S. at 472–73 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); see also *Hyatt*, 302 F.3d at 716 (noting that a "suit must 'arise out of' or 'be related to' [a defendant's] minimum contacts with the forum state").

With these principles in mind, we turn to the contacts with Illinois that P&D and the Parks had. In so doing, we find it more helpful to keep in mind the fluidity of the relationships among P&D, Philos Tech, and PLST (as well as the various people who controlled these companies), rather than to focus narrowly on the precise legal structures they chose. We see nothing to be gained by investigating whether PLST or Philos Tech is technically the joint venture partner of P&D—an examination that we fear would be fruitless given our lack of expertise in Korean law, the lack of any expert evidence on that law, and the parties' conflicting accounts. Instead, we move straight to the central question: whether P&D, Don-Hee Park, and Jae-Hee Park had the type, quality, and level of contacts with Illinois to support personal jurisdiction.

Defendants' first alleged contact occurred in May 2007, when Don-Hee Park traveled to Illinois. The district court concluded that Don-Hee did not conduct negotiations or solicit Philos Tech to enter a joint venture on this trip. In coming to this conclusion, it credited Defendants' version of the trip, *i.e.,* that Don-Hee had come to the United States for unrelated reasons and that, while he happened to be in the country, he decided to learn more about Philos Tech's work. The court also noted that May 2007 seemed quite early for the solicitation of a deal that did not result in final agreements until December of that year. The court credited Don-Hee's avowal that Philos Ko did not propose the joint venture until October 2007. It did not clearly err in making these findings. Philos Tech (perhaps relying too heavily on the fact that it did not bear the burden of proof) presented no evidence that anything beyond a preliminary informational visit occurred during Don-Hee's trip. The court's conclusion that neither negotiations nor solicitation of a deal took place at that time is consistent with the evidence before it. Thus, because the May 2007 trip was largely unrelated to the matters at issue in this lawsuit, this contact is irrelevant to our personal-jurisdiction inquiry.

The next potential contact is the December 20, 2007 agreements. The written agreements, which were executed in Korea between two Korean companies, are immaterial to our analysis. They reflect a purely Korean transaction lacking any connection to Illinois. If we credit Philos Tech's version of the events, the Joint Venture Agreement was orally modified immediately to make Philos Tech the joint venture partner. We consider later whether this adds enough to Defendants' Illinois contacts to make a difference.

Regardless of the identity of P&D's joint venture partner, Philos Tech did send equipment from its Illinois facility to P&D in Korea. Although the court noted that the evidence is conflicting whether Philos Tech actually manufactured that equipment or simply passed it through from PLST to P&D, it never resolved that question. Instead, it concluded that "Philos Tech appears to have the better of it in characterizing itself as the manufacturer." We will assume that this means the court thought that P&D acquired a product from an Illinois company.

Don-Hee's May 2008 visit to Illinois is the final potentially relevant contact with the state. The district court concluded that Don-Hee did *not* make this trip, despite the uncontradicted evidence that he did (including a transcript of a Chicago radio broadcast with Don-Hee on May 2, 2008) and the parties' agreement on the matter. The court's finding that this trip never occurred was clearly erroneous, though not in the end harmful. Don-Hee contends that he merely toured Philos Tech's facilities and received an invoice while in the state; he maintains that he did not engage in any negotiations or business discussions. Moreover, he says that his chief purpose in coming to the United States was not to visit Philos Tech but rather to attend an academic conference. Philos Tech, to the contrary, asserts that it and Don-Hee "finalized" their joint venture agreement during this trip; nevertheless, Philos Tech failed to provide details about what this "finalization" entailed.

The suit that Philos Tech filed in Illinois does not arise out of or relate to these mostly incidental interactions that Defendants had with the state. Even if we assume that P&D had some sort of agreement with Philos Tech, we already

have observed that a foreign party's contract with an in-state party alone is insufficient to support personal jurisdiction. *Burger King*, 471 U.S. at 478. *Burger King* did note that the circumstances surrounding a contract might demonstrate a foreign party's purposeful availment of a forum. Philos Tech has not, however, directed our attention to any such circumstances. To the contrary, the facts compel the conclusion that this was a *Korean* business deal from start to finish, with a couple of incidental interactions with Illinois. Most of the parties involved, including the Parks, P&D, and PLST, are Korean. The original written agreements were executed in Korea, and even the purported oral agreement was concluded over a phone call with one party in Korea. Philos Tech also acknowledges that it outsourced component parts from Korea-based PLST for the equipment that it sent to P&D in Korea.

As we already have noted, Don-Hee Park's 2007 trip to the United States is irrelevant for purposes of specific jurisdiction, because Philos Tech's lawsuit to recover the equipment it sold to P&D is not sufficiently related to this purely informational visit. See *Hyatt*, 302 F.3d at 717 ("[I]t is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis.") (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)). Even if Don-Hee engaged in some negotiations during his later May 2008 trip to Illinois, it was not he who initiated the transaction. (The district court credited Don-Hee's account, according to which Philos Ko was the instigator of this deal.) Moreover, Don-Hee did not undertake the trip for the purpose of communicating or negotiating with Philos Tech. That Defendants made a contract with an Illinois company and may have had

some conversations about it in Illinois does not outweigh the fact that they neither solicited the Illinois company to enter into an agreement nor travelled to the state for the purpose of conducting business with that company. *Cf. Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1218 (7th Cir. 1990) (noting that "[t]wo significant factors" in the conclusion that defendant purposefully availed himself of the forum were that he solicited the plaintiff's services and did so on numerous occasions). Even more jarring, for purposes of personal jurisdiction over Jae-Hee Park specifically, is the fact that, to our knowledge, Jae-Hee Park has never visited Illinois, at least on a trip that was in any way connected with Philos Tech.

The deal before us is categorically different from the franchise relationship held to confer personal jurisdiction on an out-of-state franchisee in *Burger King*. The defendant there had "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Burger King*, 471 U.S. at 480. Here, the agreement was neither highly structured nor long-lasting; instead, it was in essence a contract for the provision of goods to a Korean company. The mere fact that Philos Tech produced those goods in Illinois (possibly at the behest of Korean-based PLST) is largely incidental to the jurisdictional analysis and does not automatically confer jurisdiction over foreign defendants who otherwise lack significant connections to Illinois. *Cf. Walden*, 134 S. Ct. at 1125 (defendant's actions did not constitute sufficient contacts with forum state "simply because he allegedly directed his conduct at plaintiffs whom he knew had [forum state] connections").

Our conclusion would remain the same if we read Philos Tech's complaint to raise a claim of conversion, rather than breach of contract. Illinois courts have stated that they may exercise personal jurisdiction over defendants in tort suits "if the defendant performs an act or omission that causes an injury in Illinois and the plaintiff alleges the act was tortious in nature." *Kalata v. Healy*, 728 N.E.2d 648, 653 (Ill. App. Ct. 2000); see also 735 ILCS 5/2-209(a)(2). This analysis, however, accounts for only the *statutory* authorization to exercise personal jurisdiction; any such exercise still must comport with federal due-process principles. See *Walden*, 134 S. Ct. at 1125 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."); *Kalata*, 728 N.E.2d at 654. And, as we have just discussed, the defendants did not have sufficient contacts with Illinois such that the exercise of personal jurisdiction over them would conform to constitutional standards. Philos Tech cannot avoid that conclusion by a simple shift in the state-law theory that supports its claim.

### III

We now address Philos Tech's appeal of the district court's grant of sanctions against it under Federal Rule of Civil Procedure 11. We review a district court's grant of Rule 11 sanctions for abuse of discretion; an order imposing sanctions based on an error of law or a clearly erroneous finding of fact is a *per se* abuse of discretion. See *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 866–67 (7th Cir. 2003).

The district court found sanctions appropriate based on its finding that Philos Tech "made its submissions to this District Court with an improper purpose and with a faulty factual basis." It pointed to the discrepancy between the complaint's allegation that Philos Tech had a "meeting" with

the Parks and contracted with them to form a joint venture, and Philos Tech's later contention that its meeting was really a telephone conversation it had (likely with only Jae-Hee Park) after the Parks had executed written agreements with PLST. The court also thought that Philos Tech was lying about the existence of an oral agreement with P&D; it found instead that PLST had always been P&D's joint venture partner. It branded the relationship between Philos Tech and P&D, documented by the articles of incorporation and other papers, as a sham that the parties had perpetrated in order to obtain benefits from the Korean government.

These would be serious problems indeed if they were supported by a proper record. But they are not. The record that was developed in the hearing before the court focused on personal jurisdiction, not the merits. Such issues as the scope of the telephone meeting that occurred, why (in this close-knit group of family companies) an oral agreement might quickly have superseded a written agreement, what Korean law provides in the way of benefits to foreign investors, and how the Korean authorities would have viewed the parties' arrangements, were not adequately explored. On the record before us, it is impossible to evaluate either the legal significance of P&D's articles of incorporation and other official documents or the legitimacy of the parties' transfers of funds and equipment between Korea and the United States. And without more information about Korean law, we cannot tell whether the parties' attempts to obtain foreign direct investment benefits were part of a valid business strategy or a sham meant to deceive Korean officials.

In the absence of a solid reason for condemning the joint venture reflected in P&D's articles of incorporation as a

"sham," we cannot be confident that Philos Tech was untruthful in its filings about its dealings with P&D and the Parks. On such a murky record, where the legal implications of the parties' actions are so uncertain, the court was wrong to characterize Philos Tech's bid for personal jurisdiction in the Northern District of Illinois as unscrupulous or underhanded. Philos Tech's argument that personal jurisdiction over Defendants existed was not baseless. If Philos Tech had not taken such a passive position at the critical hearing, then there would have been some chance that the district court might have found personal jurisdiction. (Several Korean courts have found that it was a joint venture partner of P&D, after all.) A court should not impose sanctions on a party that loses an argument, as long as the argument was not entirely groundless. See *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993). Philos Tech had enough support for its contentions related to personal jurisdiction to avoid Rule 11 sanctions.

Our uncertainty about relevant Korean law, the existence of related Korean litigation, and principles of comity reinforce our doubts about the propriety of sanctions. See *Hilton v. Guyot*, 159 U.S. 113, 164 (1895) ("[Comity] is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation."). Before the district court issued its sanctions order, several Korean courts had made findings that contradicted the factual determinations that undergirded the district court's imposition of sanctions. In particular, those courts determined that Philos Tech was P&D's joint venture partner. The district court's sanctions order unnecessarily put it in conflict with the Korean judiciary. Especially since possible abuse of Ko-

rean law played a significant role in the court's decision, there is every reason to defer to the Korean courts' assessment of that issue. The existence of these Korean court judgments, combined with the many legal and factual uncertainties in this case, lead us to conclude that the district court went too far when it imposed sanctions on Philos Tech.

**IV**

Finally, we address Philos Tech's argument that the district court should have granted its motion under Federal Rule of Civil Procedure 60(b)(3), (b)(6), and (d)(3). We review the denial of a Rule 60(b) motion for abuse of discretion. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758 (7th Cir. 2010). Rule 60(b)(3) provides relief from a final judgment when a party has committed fraud in the context of the legal proceeding. The party complaining of fraud must establish the fraud by clear and convincing evidence and must demonstrate that the fraud prevented it from fully and fairly presenting a meritorious claim. See *id.* at 758–59; see generally 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2860 at 412–13 (3d ed. 2012). Rule 60(b)(6) is a catch-all provision that allows a judgment to be set aside for "any other reason that justifies relief," and Rule 60(d)(3) affirms that a court can "set aside a judgment for fraud on the court."

Philos Tech filed its motion on the basis of the Parks' Korean perjury convictions for statements regarding the joint venture with P&D. As we noted earlier, Jae-Hee was found guilty of perjury for falsely averring that P&D's joint venture partner had never changed from PLST to Philos Tech. Her conviction was vacated by the appellate court, but the prosecutors have taken a further appeal to the Korean Supreme

Court. Don-Hee was convicted on the basis of his avowal that he had never seen P&D's Articles of Incorporation before and that he had not made an agreement for Philos Tech to supply equipment to P&D as an investment in P&D. Their convictions occurred after the district court's orders granting Defendants' Rule 60(b) motion and imposing sanctions. Philos Tech argues that the court should have concluded from these convictions that the Parks had committed fraud when they swore in this litigation that Philos Tech was never P&D's joint venture partner.

These judgments do not, however, supply the requisite evidence of fraud. The Parks have never admitted that they lied, and in fact Jae-Hee Park's conviction was vacated on appeal, and both cases continue to be appealed in the Korean courts. Korean criminal trials may involve different burdens of proof and evidentiary standards than those in the United States, and the line between fraud and perjury might differ. The cases on which Philos Tech relies deal with incontrovertible (or nearly incontrovertible) evidence of perjury or forgery, such as witnesses' admissions of lying under oath or the discovery of physical facts that would lead any reasonable person to conclude that earlier statements were false. See, *e.g.*, *Murdoch's Estate v. City of Philadelphia*, 432 F.2d 867, 869–70 (3d Cir. 1970) (involving uncontroverted documentary evidence showing that litigant had misrepresented his involvement in the event in dispute); *Peacock Records, Inc. v. Checker Records, Inc.*, 365 F.2d 145, 148 (7th Cir. 1966) (relief required where witnesses were willing to testify that they had perjured themselves in the course of the litigation). The later-in-time, appealable decisions of foreign courts that we have here are qualitatively different from (and significantly less conclusive than) the evidence of fraud presented in

these cases. Moreover, neither comity nor any U.S.-Korea treaty requires a U.S. court to give preclusive effect to a foreign-court judgment that postdates the U.S. court's contrary ruling. *Cf. Gabbanelli Accordions & Imports, LLC v. Gabbanelli*, 575 F.3d 693, 697 (7th Cir. 2009) ("Because the Italian judgment postdates the American one, it cannot be pleaded as res judicata."). If the Parks committed perjury in Korea, then presumably they will suffer the consequences there. As for the U.S. proceeding, Philos Tech has not mustered clear and convincing evidence of the Parks' fraud, and so the district court acted within permissible boundaries when it refused to set aside the judgment on this basis.

## V

Because Defendants lack sufficient contacts with Illinois, the district court lacked personal jurisdiction over them. We thus AFFIRM the district court's grant of Defendants' motion under Federal Rule of Civil Procedure 60(b)(4). We also AFFIRM the district court's denial of Philos Tech's motion under Rules 60(b)(3), (b)(6), and (d)(3). We conclude, finally, that the district court erred in imposing sanctions on Philos Tech, and so we VACATE its sanctions order. Each side must bear its own costs on appeal.