**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2019[*]
Decided September 13, 2019

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2626

| | |
|---|---|
| CASSANDRA WASHINGTON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17-CV-2343 |
| CHICAGO BOARD OF EDUCATION, *Defendant-Appellee*. | **Manish S. Shah**, *Judge*. |

**O R D E R**

Cassandra Washington appeals the dismissal of her complaint seeking, among other things, a declaration that a settlement agreement between her and the Chicago Board of Education, her former employer, is unenforceable. The district court ruled that the agreement was valid and dismissed the suit. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See Fed. R. App. P 34(a)(2)(C).

We accept as true the allegations in Washington's complaint and take judicial notice of the information in the settlement agreement that she attached to it. See *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013). Beginning in 2014, the Board employed Washington as the principal of Stephen F. Gale Community Academy. But in 2016, Washington's supervisor issued her a Corrective Action Plan which, according to her, set "unreasonable" and "unrealistic" goals for the students' academic performance at the school. According to Washington, the plan was part of the Board's unwritten policy of "systematically target[ing] experienced African-American female contract principals who were more than forty years of age for unjustified removal." Two months later, the Board demanded that Washington resign or else face involuntary termination after a public hearing.

The Board's attorneys then presented Washington and her attorney with a Settlement Agreement and General Release, which she and the Board's general counsel signed. Washington consented to her removal as principal of Gale, without going through a contested hearing under 105 ILCS 5/34-8.3(d)(2). This provision allows the CEO of Chicago Public Schools, with the Board's approval, to remove and replace the principal of a school on probation that does not make adequate progress. Washington also agreed, "after being afforded the opportunity to receive the advice and assistance of counsel of her own choosing," to "release[] and forever discharge[] all claims or causes of action which she has or may have against the Board," including those arising out of her employment and separation. In exchange, the Board agreed to remove the Corrective Action Plan from Washington's file and not to place her in a negative light during the uncontested hearing. But it could present "some references to poor academic results" to justify her removal. The Board would also "reassign" Washington to an administrative position at the same salary for four months and then transfer her again to unpaid leave until the end of the school year. Further, the Board agreed not to contest any unemployment-compensation claims.

Washington's next step was this lawsuit, which she pursued with the assistance of counsel at all times in the district court. The operative complaint asked the district court to declare that the settlement agreement is unenforceable under state and federal law and to order the rescission of the contract. She alleged that the agreement violated the Board's own rules, which required (1) the consent of the Local School Council before removing her as principal, and (2) the Board's approval of the agreement (rather than just its general counsel's) because it obligated payment to Washington of more than $50,000.

Washington also alleged that the Board had procured the settlement by fraud. She claimed that a "special relationship" existed between her and the Board's attorneys, giving them "influence and superiority over her" and thus requiring them to disclose to her accurate and complete information. But, she said, the attorneys did not explain the Board's procedures for a removal hearing under 105 ILCS 5/34-8.3(d) and did not explain that she was waiving her due process rights. Finally, she alleged that the Board breached the agreement by denying her a raise tied to a collective bargaining agreement and placing her in a negative light during the removal hearing.

The Board moved to dismiss the second amended complaint, arguing that Washington had knowingly and voluntarily executed the settlement agreement, in which she released all her claims against it. The district court agreed with the Board that the settlement agreement was enforceable and dismissed the suit. Washington asked the court to reconsider its rulings and for leave to file another complaint (her fourth), but the district court denied both requests.

We review the dismissal *de novo*. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 704–05 (7th Cir. 2019). State contract law governs the formation, construction, and enforcement of settlement agreements. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). Under Illinois law, which governs this contract, a settlement generally is enforceable if there was mutual assent to material terms. *Id.*

Washington first argues that the settlement agreement is void because § 4-1(c)(6) of the Board's rules required the Local School Council's consent to remove her as principal. The Board's rules have the force of law. See *Veazey v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 59 N.E.3d 857, 866 ¶ 30 (Ill. App. 2016). But § 4-1(c)(6) allowed the Board to remove Washington after a hearing under 105 ILCS 5/34-8.3 "*or* upon consent of … the Local School Council." Because the Board removed her under the statute, the Council's consent was unnecessary.

Washington also maintains that the agreement is void because its value exceeded $50,000, and the Board did not approve it as required by § 3-2 of the Board's rules. A contract that is "beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action." *Ad-Ex, Inc. v. City of Chicago*, 565 N.E.2d 669, 673 (Ill. App. 1990). Section 3-2 permits the general counsel "to settle any matter" for "a sum" up to $50,000 without Board approval. The settlement provided that Washington would be "reassigned" to an administrative position and "continue" to receive the same pay, which, for four months, would have been more than $50,000. We agree with the district court that we should, if possible, interpret this obligation to be consistent with the law and public policy of Illinois. See *Enterprise Leasing Co. of St. Louis v. Hardin*, 956 N.E.2d

1059, 1064 (Ill. App. 2011). This agreement provided only for reassignment, not the payment of "a sum." The Board did not incur additional liability, and payment of more than $50,000 was not inevitable. Washington could have quit, and if she had, the Board could have stopped paying her. Her interpretation would make it difficult for the general counsel to settle any employment dispute on terms that allow an employee to keep working.

Washington next argues that the settlement is void as against public policy because it released "non-waivable" claims, specifically: (1) Equal Pay Act claims for denying her a raise after her reassignment, (2) unemployment-compensation claims, and (3) workers' compensation claims. Illinois prohibits construing a release to "include claims not within the contemplation of the parties" or to "cover claims that may arise in the future." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89–90 (Ill. 2003). We assume, without deciding, that an employee cannot waive claims under the Equal Pay Act. See *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 607 (6th Cir. 2013). But the general language in the release did not waive Washington's claims under that Act because they are based on conduct that occurred after she signed it. *Feltmeier*, 798 N.E.2d at 90. Illinois also restricts the ability to waive unemployment and workers' compensation claims. 820 ILCS 305/23 & 405/1300. The Board agreed not to contest unemployment claims, however, so the release did not cover them. Moreover, the Board has not argued that Washington released any workers' compensation claims, which in any event would require the approval of the Illinois Workers' Compensation Commission. See 820 ILCS 305/23. Thus, the parties did not draft the release to cover these claims. See *Feltmeier*, 798 N.E.2d at 90.

Nor can Washington void the settlement on a theory of fraudulent concealment. To prevail on this claim, she had to allege the existence of a special relationship giving rise to a duty to speak on the Board's part. See *Vandenberg v. Brunswick Corp.*, 90 N.E.3d 1048, 1056 (Ill. App. 2017). Washington contends that, because she took legal advice from Board attorneys in the past, she developed a special relationship with them requiring them to explain the consequences of the settlement; instead, she says they concealed this information. But in the context of adversarial settlement negotiations, the Board's interests were obviously contrary to Washington's, so the Board and its attorneys owed her no duty to speak. See *Auto-Owners Ins. Co. v. Konow*, 57 N.E.3d 1244, 1250 (Ill. App. 2016) (victim's attorney owed no fiduciary duty of disclosure to tortfeasor or his attorney regarding potential liens affecting settlement); *Oakland Police & Fire Retirement System v. Mayer Brown, LLP*, 861 F.3d 644, 651–52 (7th Cir. 2017) (borrower's law firm owed no fiduciary duty of disclosure to lenders and their attorneys); *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir.

2006). She also had her own counsel. Now, she asserts that her lawyer was not "independent," but she waived that issue by raising it for the first time on appeal. See *O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015).

Washington's allegations of coercion and economic duress likewise fall short. See *In re Marriage of Tabassum & Younis*, 881 N.E.2d 396, 410 (Ill. App. 2007) (duress and coercion are "basically the same"). She argues that she sufficiently alleged duress because the Board threatened to remove her after a humiliating public hearing, and she had a "medical condition," though she provides no detail about it. But "one cannot successfully claim duress … when he had an alternative to signing the agreement." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995). Threatening to remove Washington was not illegal or wrong. See 105 ILCS 5/34-8.3(d)(2); *In re Marriage of Tabassum & Younis*, 881 N.E.2d at 410. She could have contested her removal rather than consent to it; the financial pressure she faced does not establish economic duress. *Bank of America, N.A. v. 108 N. State Retail LLC*, 928 N.E.2d 42, 57 (Ill. App. 2010).

Washington also raises the "pre-existing duty" rule to suggest that she received no consideration under the settlement agreement. When a party agrees to do what it is already legally obligated to do, "there is no consideration as there is no detriment." *Urban Sites of Chicago, LLC v. Crown Castle USA*, 979 N.E.2d 480, 494 (Ill. App. 2012). Washington asserts that the Board was already required to (1) pay her principal salary, (2) remove the Corrective Action Plan from her file, and (3) not contest unemployment claims. If a settlement agreement could be set aside on this theory that the other party's legal position lacked merit, thus showing the absence of consideration for the settlement agreement, no case could be settled with confidence.

Moreover, as a matter of fact and law, the Board had the authority to remove her as principal, so it did not have to keep employing and paying her. 105 ILCS 5/34-8.3(d)(2). Washington cites no authority requiring the Board to remove the Corrective Action Plan from her file except her opinion that it was not "based on facts." And despite her view that the Board would have no basis to challenge an unemployment claim, it was free to do so. See, e.g., 820 ILCS 405/804; Ill. Admin. Code. tit. 56, § 2720.130. The Board's promise to refrain from contesting a claim was also consideration given to Washington.

Washington further complains that she did not have an opportunity for a hearing before the Board. She consented, however, to removal as principal after an uncontested hearing. And her claim that her own attorney did not explain the consequences of the agreement to her is insufficient to conclude that her consent was not knowing and voluntary. See *Baptist v. City of Kankakee*, 481 F.3d 485, 490–91 (7th Cir. 2007).

Washington next contends that, even if the settlement agreement is valid, the Board breached it by denying her a pay raise and referencing Gale's poor academic results at the removal hearing, thereby placing her in a negative light. The Board agreed to pay her "the same pay and benefits that she received as the principal of Gale." She contends that this entitled her to a raise given to other principals because her salary as principal was tied to a collective bargaining agreement. But the obligation is phrased in the past tense and does not state that the rate would change. Moreover, the agreement contained an integration clause and did not incorporate her earlier contract or the collective bargaining agreement. See *GCIU Emp'r Ret. Fund v. Chicago Tribune Co.*, 66 F.3d 862, 865 (7th Cir. 1995). Thus, the Board did not breach the agreement by freezing her salary at "the same pay" she had as principal. And the agreement expressly permitted references to poor academic results at the hearing, so the Board did not breach the agreement by placing her in a negative light.

Finally, Washington argues that the district court abused its discretion by denying her request to file another amended complaint. We will uphold a district court's decision when it reasonably explains why it denied the proposed amendment. See *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). Here, the district court denied leave to amend because Washington had filed three complaints before the dismissal, which the court considered ample opportunity to state a claim. Moreover, Washington provided no excuse for why she (and her counsel) delayed adding her new theories and claims until filing a fourth complaint, much less an explanation for the sheer volume of undeveloped and cursory arguments that she has presented during this litigation. See *McCoy v. Iberdola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014). The district court did not abuse its discretion.

The court also permissibly exercised its discretion to deny Washington's motion for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b)(3). Rather than showing a manifest error of law or introducing new evidence, she merely put a different spin on the same arguments about the necessity of the Local School Council's consent and waiver of supposedly non-waivable claims. See Fed. R. Civ. P. 59(e); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). She also failed to supply evidence that the Board hindered her case by concealing from her one of the Board's public rules and a paycheck that she had received from the Board. She already had access to both the rules and the paycheck. See Fed. R. Civ. P. 60(b)(3); *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 917 (7th Cir. 2015).

We have considered Washington's other contentions, and none has merit. The judgment of the district court is

AFFIRMED.