# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2980

be2 LLC and be2 HOLDING, A.G.,

*Plaintiffs-Appellees*,

*v.*

NIKOLAY V. IVANOV,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-CV-01650—**Milton I. Shadur**, *Judge.*

SUBMITTED APRIL 6, 2011*—DECIDED APRIL 27, 2011

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* One online matchmaking service has sued another for trademark infringement. The issue on appeal is whether the defendant's Internet activity made him susceptible to personal jurisdiction

---

* After examining the briefs and the record, we concluded that oral argument is unnecessary. The appeal has been submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2)(C).

in Illinois for claims arising from that activity. We conclude that it did not, so we reverse and remand with directions to dismiss for lack of personal jurisdiction.

We set out the facts as they appear in the complaint. Plaintiff be2 LLC is a Delaware limited liability company that is also headquartered in that state. Its parent company, be2 Holding, A.G., is organized and headquartered in Germany. These companies, which we collectively call be2 Holding, run an Internet dating website located at be2.com. Plaintiff be2 Holding originally offered its dating service only to singles in Europe. Over the past few years, be2 Holding has extended its reach to 14 million users in 36 countries, including the United States.

The complaint asserts claims arising under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), federal common law, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 to /7. The complaint names Nikolay Ivanov, a resident of New Jersey, as a defendant. Allegedly he is the co-founder and CEO of be2.net and also the person "responsible for the majority of business transactions" on the website. Until December 2006, the complaint continues, Ivanov offered a matchmaking service through the website sladurana.com. Until that time, the be2.net website had been just a collection of links to other Internet sites. But during December 2006, Ivanov allegedly moved his matchmaking service to the website be2.net, deliberately choosing to use an existing domain address and design that were "confusingly similar" to be2.com "with the intention of misleading consumers."

Ivanov did not answer the complaint or attend a scheduled status hearing, so the district court granted plaintiff's oral motion for entry of default under Rule 55(a) of the Federal Rules of Civil Procedure. On plaintiff's motion, the court later entered a default judgment under Rule 55(b)(2). To prove its damages, be2 Holding submitted a declaration from Andreas Etten, its co-CEO and a member of its board of directors. Etten attached to his declaration a series of documents printed from the Internet. Some of those documents were more relevant to whether personal jurisdiction was proper in Illinois than they were to damages. One document is a printout from the "American personals" directory of the website be2.net. The document shows that when the website was accessed one year before the hearing, 10 men and 10 women with Chicago addresses had registered on be2.net for matchmaking services. Another document, printed from the website sladurana.com, is headlined "be2 Management Team" and highlights Nick Ivanov as the CEO and co-founder, as well as "the one responsible for censorship, profile approval, design, and advertising." The page was printed from the website sladurana.com, but it is emblazoned with the "be2.net" logo. The document also includes a disclaimer emphasizing that "be2.NET is in *NO WAY* affiliated with be2.COM and their unfair practices." A third document apparently is Ivanov's profile printed from the social-networking website LinkedIn. Under the category "Experience," it includes another description of Ivanov as the co-founder and CEO of "be2.net" and boasts that the website offers free "dating services with hundreds of thousands of online users."

After the district court entered its final default judg-
ment against Ivanov, he appeared for the first time
through counsel and filed a motion to vacate the judg-
ment as void for want of personal jurisdiction. Along
with his motion, Ivanov submitted an affidavit in which
he claimed that he was not the co-founder and CEO of
any company called be2.net but merely a volunteer for
Sladur, the Bulgarian company that had registered and
owned the domain name be2.net. Ivanov, a Bulgarian-
American, claimed that he had written a testimonial on
Sladur's Bulgarian matchmaking site, which prompted
the company to ask for his help in breaking into the
United States market. He agreed, he said, because he
was proud to be of service to a company from his
native land, but claimed that his tasks consisted mostly
of translating website content from Bulgarian to English,
responding to some customer inquiries, and approving
users' profiles. He already had a full-time job, he
claimed, and said he thought of his work for Sladur as a
"hobby." He tried to explain his "CEO" status by
claiming that Sladur had held him out as the CEO of
be2.net and by insisting that the acronym stood only
for "Centralized Expert Operator." Sladur never compen-
sated him for his services, he claimed, nor did he
receive any other financial benefit from his association
with the website be2.net. And, he concluded, he had
never set foot in the state of Illinois.

With ample reason, the district court found that Ivanov
was not credible. The court denied the motion to vacate
the judgment. The court relied on what it described
as "the whole list of Chicago contacts, the result of

Mr. Ivanov's activity," and concluded that "the idea of the absence of effective Illinois contacts sufficient to support in personam jurisdiction is undercut dramatically." As for the argument that Ivanov was merely a volunteer, the district court pointed to his Internet boasting that he was co-founder and CEO of be2.net. And the district court resoundingly rejected Ivanov's "Centralized Expert Operator" explanation for describing himself as "CEO."

Appearing pro se again on appeal, Ivanov renews his argument that he is not subject to personal jurisdiction in Illinois. Because he knew about the suit and chose to default rather than defend, he must bear the burden of proof on his post-judgment motion challenging personal jurisdiction. See *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986).

The district court's denial of Ivanov's motion to vacate cannot be sustained, as be2 Holding argues, as an exercise in "discretion piled on discretion."[1] When a district court enters a default judgment without personal jurisdiction over the defendant, "the judgment

---

[1] Ivanov called his motion one under Rule 60(b)(4) based on lack of jurisdiction. Because he filed his motion less than 28 days after judgment was entered, it is technically a Rule 59(e) motion, but under these circumstances the technical distinction makes no practical difference. The personal jurisdiction issue arises often under Rule 60(b)(4), and we rely on precedents applying that rule.

is void, and it is a per se abuse of discretion to deny a motion to vacate that judgment." *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010); see also *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 118 (5th Cir. 2008) (applying de novo review on issue of personal jurisdiction); *Blaney v. West*, 209 F.3d 1027, 1031 (7th Cir. 2000) (noting that appellate review under Rule 60(b)(4) is more stringent than under other portions of Rule 60(b)), citing *United States v. Indoor Cultivation Equipment from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316-17 (7th Cir. 1995).

The personal jurisdiction issue boils down to one of federal constitutional law. Plaintiff be2 Holding asserts claims arising under the Lanham Act, federal common law, and Illinois law. The Lanham Act does not authorize nationwide service of process, *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004), so a federal court sitting in Illinois may exercise jurisdiction over Ivanov in this case only if authorized both by Illinois law and by the United States Constitution. See Fed. R. Civ. P. 4(k)(1)(A); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Illinois long-arm statute, in turn, permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States. 735 ILCS 5/2-209(c).

As noted above, the district court had ample grounds for discounting Ivanov's credibility. It was preposterous for him to suggest that, by holding himself out as the "CEO" of be2.net, he actually meant to communicate that he was the website's "Centralized Expert Operator."

But even if we discount all such details in Ivanov's affidavit, he has still shown an absence of ties to or activities in Illinois. The question becomes whether the evidence originally submitted by be2 Holding was sufficient to show that Ivanov could be required to defend himself on these claims in Illinois.

We conclude on this record that the United States Constitution forbids an Illinois court to exercise personal jurisdiction over Ivanov in this case. The Due Process Clause is satisfied only if Ivanov has minimum contacts with Illinois such that requiring him to defend against this lawsuit in the state "does not offend traditional notions of fair play and substantial justice." See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff be2 Holding relies on a theory of specific jurisdiction based on alleged effects on it in Illinois. See generally *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (summarizing law of specific jurisdiction as applied to torts allegedly committed over Internet).

Our inquiry boils down to this: has Ivanov purposely exploited the Illinois market? See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (upholding jurisdiction over magazine publisher that had "continuously and deliberately exploited" the market in forum state); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 & n.1 (7th Cir. 2010) (finding that defendant's advertising in and Internet contacts with Illinois were sufficient to support personal jurisdiction); cf. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (finding that defendant's

operation of website that could be accessed in Illinois was not sufficient to support personal jurisdiction). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

"Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010). Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market. See *uBID*, 623 F.3d at 427-29; *Hemi Group*, 622 F.3d at 758; *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002); *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 360-61 (S.D.N.Y. 2009); *Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 2d 108, 115-16 (D. Mass. 2006); *Snowney v. Harrah's Entertainment, Inc.*, 112 P.3d 28, 34 (Cal. 2005). If the defendant merely operates a website, even a "highly interactive" website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution. See *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 394-95, 401 (4th Cir.

2003); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000); *Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367, 1370-71, 1377-78 (N.D. Ga. 2009); *Capitol Records*, 611 F. Supp. 2d at 358-59; *Minnesota Public Radio v. Virginia Beach Educational Broadcasting Foundation*, 519 F. Supp. 2d 970, 976, 979 (D. Minn. 2007).

The record before us does not show that Ivanov deliberately targeted or exploited the Illinois market. All that be2 Holding submitted regarding Ivanov's activity related to Illinois is the Internet printout showing that just 20 persons who listed Illinois addresses had at some point created free dating profiles on be2.net. The printout shows only the nickname and age of each user, the city the user then called home, and the type of relationship the user was seeking. Even if these 20 people are active users who live in Illinois, the constitutional requirement of minimum contacts is not satisfied simply because a few residents have registered accounts on be2.net. To the contrary, these are attenuated contacts that could not give rise to personal jurisdiction without offending traditional notions of fair play and substantial justice.

We see no evidence that Ivanov targeted the Illinois market that might make this case more comparable to GoDaddy's massive and successful exploitation of the Illinois market in *uBID v. GoDaddy Group* through an advertising campaign that produced hundreds of thousands of customers in the state and millions of dollars in annual revenues. See 623 F.3d at 428-29. We do not see

evidence of any interactions between Ivanov and the be2.net members with Illinois addresses. The absence of that evidence and the minuscule number of registrants make this case much closer to *Mobile Anesthesiologists*, where the accessibility of the website in Illinois was not sufficient to show conduct targeted at the state. 623 F.3d at 446. As far as we can tell from the documents submitted by be2 Holding, the 20 Chicagoans who created free profiles on be2.net may have done so unilaterally by stumbling across the website and clicking a button that automatically published their dating preferences online. There is no evidence that defendant Ivanov targeted or exploited the market in the state that would allow a conclusion that he availed himself of the privilege of doing business in the state.

We REVERSE the district court's order denying Ivanov's postjudgment motion and REMAND the case with instructions to vacate the judgment and dismiss the complaint for lack of personal jurisdiction.