In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 18-2868

TAI MATLIN and
JAMES WARING,

*Plaintiffs-Appellants*,

*v.*

SPIN MASTER CORP.,
SPIN MASTER LTD., and
SWIMWAYS CORPORATION,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 07706 — **Virginia M. Kendall**, *Judge*.

_____

ARGUED FEBRUARY 6, 2019 — DECIDED APRIL 22, 2019

_____

Before KANNE, SYKES, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Tai Matlin and James Waring appeal the district court's dismissal of their suit against Spin Master Corporation, Spin Master Ltd., and Swimways Corporation for lack of personal jurisdiction and improper venue. Because

the defendants have insufficient contacts with Illinois to establish specific personal jurisdiction, we affirm.

## I. BACKGROUND

Along with other business partners, two Illinois residents, Tai Matlin and James Waring, co-founded a company called Gray Matter Holdings, LLC, in 1997.[1] Matlin and Waring developed certain products for Gray Matter, including an inflatable beach mat known as the "Snap-2-It" and a radio-controlled hang glider called the "Aggressor."

In 1999, after learning that the company faced failure, Matlin and Waring entered into a Withdrawal Agreement with Gray Matter wherein they sold their partnership shares of the company and forfeited their salaries. The Withdrawal Agreement also included a provision that assigned Matlin and Waring's intellectual property and patent rights to Gray Matter, but entitled them to royalties on the sale of the products. In the years following the Withdrawal Agreement, Matlin and Waring frequently brought Gray Matter to arbitration to enforce their royalty rights.

In 2002, Gray Matter filed an assignment of the products' intellectual property rights with the United States Patent and Trademark Office. Matlin and Waring allege that Gray Matter filed the assignment without their knowledge and that the company forged Waring's signature on the paperwork. The following year, Gray Matter sold assets to Swimways, including the patent rights to Matlin and Waring's products. A 2014 binding arbitration between Gray Matter and the plaintiffs

---

[1] Although Gray Matter eventually changed its name to 180s LLC, we refer to it as "Gray Matter" for clarity.

determined that Gray Matter did not assign the Withdrawal Agreement to Swimways upon sale of the products and that the plaintiffs were owed no further royalties. Accordingly, Swimways never paid royalties to Matlin or Waring. Then in 2016, Spin Master acquired Swimways and the intellectual property rights at issue here.

In 2017, Matlin and Waring filed this suit against Swimways, Spin Master Corp., and Spin Master Ltd. in the Northern District of Illinois. They argued they were still entitled to royalties for the products and brought claims of fraud and breach of contract against Swimways, and unjust enrichment against all defendants. Swimways is a Virginia corporation with its principal place of business in Virginia Beach. The Spin Master defendants are Canadian companies with their principal places of business in Toronto. None of the defendants are registered to conduct business in, have employees in, or have registered agents for service of process in Illinois.

The defendants moved to dismiss Matlin and Waring's complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. The defendants submitted declarations from their respective corporate officers in support of their motion, outlining how the companies lacked sufficient contact with Illinois to establish personal jurisdiction. In response to defendants' motion to dismiss, plaintiffs' counsel submitted an online purchase receipt from Swimways' website and a declaration stating that he purchased and received a single patented product in Illinois. Matlin and Waring believed that, along with the complaint's allegations, this purchase of a royalty-generating product sufficiently established personal jurisdiction over the defendants.

The district court rejected Matlin and Waring's argument and granted the defendants' Motion to Dismiss. The court determined that because Matlin and Waring asserted only common law claims against the defendants, Illinois law governed whether it had personal jurisdiction over the defendants. The court then turned to the Illinois Long Arm Statute and the state's case law to determine whether asserting personal jurisdiction over the defendants would violate their right to due process. Accordingly, it held that the defendants had insufficient contacts with Illinois to establish either general or specific personal jurisdiction in that state. The defendants subsequently filed a Motion for Sanctions against plaintiffs under Federal Rule of Civil Procedure 11.

Matlin and Waring appealed the court's dismissal. We note that defendants' Motion for Sanctions against Matlin and Waring, pending before the district court, has no impact on our jurisdiction over Matlin and Waring's appeal. *See Cleveland v. Berkson*, 878 F.2d 1034 (7th Cir. 1989).

## II. ANALYSIS

On appeal, Matlin and Waring argue that the district court erred in holding that it had no personal jurisdiction over the defendants. Specifically, they maintain that the defendants established sufficient contacts in Illinois by selling the royalty-generating products online and shipping them into the state. Additionally, they believe that the district court misinterpreted our case law in the wake of *Walden v. Fiore*, 571 U.S. 277 (2014). Plaintiffs also appeal the district court's dismissal for improper venue. Because we agree that the district court had no personal jurisdiction over the defendants, we do not address the venue issue. *See* 28 U.S.C. § 1391(b)(3) (venue can be proper where the court has jurisdiction over the defendants).

We review dismissal for lack of personal jurisdiction *de novo*. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Matlin and Waring bear the burden of establishing personal jurisdiction. *Id*. Where, as here, the defendants submit evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the district court bases its determination solely on written materials and not an evidentiary hearing, plaintiffs must only make a *prima facie* showing of personal jurisdiction over the defendants to survive their motion to dismiss. *Id*. "[W]e take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff[s]." *Tamburo*, 601 F.3d at 700.

*A. Due Process Requirements for Specific Personal Jurisdiction*

Because Matlin and Waring bring claims based in state common law, "a federal court sitting in Illinois may exercise jurisdiction over [the defendants] in this case only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). To that end, the Illinois Long Arm Statute provides that courts may exercise jurisdiction on any basis allowed by the due process provisions of the Illinois and federal constitutions. *See* 735 Ill. Comp. Stat. 5/2-209(c). The district court may exercise jurisdiction only if both constitutions' due process requirements are met. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756 (7th Cir. 2010).

We previously observed that although the Illinois Constitution may theoretically provide greater due process protections for nonresident defendants, no Illinois case has

provided a definitive explanation of the differences between federal and Illinois due process. *See Hemi Group*, 622 F.3d at 757; *see also Russell v. SNFA*, 2013 IL 113909, ¶ 32 ("[T]here have been no decisions from [the Illinois Supreme Court] or the appellate court identifying any substantive difference between Illinois due process and federal due process on the issue of a court's exercising personal jurisdiction over a nonresident defendant."); *see also* Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 8 (2018) (noting that, like many other fundamental rights, due process rights originated in state constitutions and that parties in federal courts usually neglect arguments based on state constitutional grounds). Because neither party here urges that the Illinois due process analysis differs, we only consider the requirements of federal due process.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283. A nonresident defendant generally must "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Walden*, 571 U.S. at 283.

Although two types of personal jurisdiction (general and specific) exist, the parties agree that only specific personal jurisdiction applies here. For specific personal jurisdiction, "the defendant[s'] contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702; *see also Walden*, 571 U.S. at 283–84. "Specific personal jurisdiction is appropriate where (1) the defendant has

purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The second element is crucial—and "[w]e cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

In *Hemi Group* and other cases, we cautioned that courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state." 622 F.3d at 760; *be2 LLC*, 642 F.3d at 558; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). For a court performing a minimum-contacts analysis for personal jurisdiction purposes, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801. The record must show that the defendants targeted the forum state. *be2 LLC*, 642 F.3d at 558–59.

*B. The District Court Properly Distinguished Hemi Group*

Plaintiffs rely heavily on language in our decision in *Hemi Group* to support their claim that personal jurisdiction exists in this case. In *Hemi Group*, we held that a New Mexico cigarette distributor who sold over 300 packages of cigarettes to an Illinois Department of Revenue agent through an

interactive website over the course of multiple years was subject to personal jurisdiction in Illinois. 622 F.3d at 760. Our opinion noted that Hemi Group's website expressed a willingness to sell in all states but New York, which indicated that it would sell in the Illinois marketplace. *Id*. at 755-56. But (at least) three significant factors distinguish this case from *Hemi Group* and support the district court's dismissal.

The first is the scale of contact with Illinois. *Hemi Group* involved a defendant's systematic contact with the forum state through repeated sales of a regulated product over a period of multiple years, not a single incident conjured up by the plaintiffs' attorney for the exclusive purpose of establishing personal jurisdiction over the defendants. *See also Russell*, 2013 IL 113909, ¶ 68 ("[S]pecific jurisdiction should not be exercised based on a single sale in a forum, even when a manufacturer or producer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 890–91 (2011) (Breyer, J., concurring in judgment)).

Second, the relationship between the defendants' conduct and the State differs significantly. In *Hemi Group*, the defendant's systematic contact with Illinois involved unregistered sales of a regulated product, tobacco, in violation of state law. There, the defendant's offending activities significantly related to the forum state and its laws. Here, however, the plaintiffs bring claims with an attenuated relationship to Illinois and any sales that occurred there. In other words, this case is not "a suit arising out of or related to the defendant[s'] contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For example, this is not the

type of case where the defendants sold and shipped a defective product into Illinois that injured residents there. Rather, this dispute involves an out-of-state defendant's refusal to pay royalties on sales made nationwide. The Illinois sales are not the issue here. The royalty claims derive from a non-party's contractual obligation and the defendants' alleged complicity in supposed fraud committed by that non-party. The underlying contracts include forum selection and choice of law clauses (which do not select or choose Illinois). The defendants' actions of paying or not paying royalties more appropriately relate to Virginia—where Swimways makes business decisions at its headquarters.

Third, the *Hemi* defendant's contacts with Illinois occurred over a period of time before the state filed suit. In this case, Matlin and Waring attempted to salvage personal jurisdiction—*after* the defendants moved to dismiss—by luring them into shipping a product into Illinois. Because specific personal jurisdiction derives from the plaintiffs' relevant contacts with the forum, we cannot allow plaintiffs to base jurisdiction on a contact that did not exist at the time they filed suit. The plaintiffs' tactics flout the due process limitations on personal jurisdiction, which restrict courts' jurisdiction over certain defendants if haling them into court would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *Hemi Group*, 622 F.3d at 757. We reject the argument that "fair play" includes a scenario where plaintiffs sue defendants in an unfamiliar forum and the district court permits the plaintiffs' attorney to create jurisdiction, *ex post facto,* from a single online purchase.

We conclude that the district court correctly declined to exercise personal jurisdiction over the defendants. As we

previously explained, in a minimum contacts analysis "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801. The defendants' alleged objectionable conduct in this case—failing to pay Matlin and Waring royalties on the products—has little to do with Illinois. Matlin and Waring essentially argue that their attorney's online purchase of a single royalty-generating product caused an Illinois-based harm that connects to the defendants' eventual non-payment of that royalty. But even if we accepted that a single online sale provided a sufficient link to the royalty dispute, Matlin and Waring face another problem. Here the plaintiff-initiated contact arose after the plaintiffs filed suit—solely to lure the defendants into Illinois to establish personal jurisdiction over them. The defendants did not target Illinois and should not be subject to suit there. *See be2 LLC*, 642 F.3d at 558–59 ("If the defendant merely operates a … 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.").

### III. CONCLUSION

Based on the foregoing, we believe the district court correctly dismissed plaintiffs' claims for lack of personal jurisdiction over the defendants. AFFIRMED.