In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2465

J.S.T. CORPORATION,

*Plaintiff-Appellant,*

*v.*

FOXCONN INTERCONNECT
TECHNOLOGY LTD., *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-300 — **Virginia M. Kendall**, *Judge.*

ARGUED FEBRUARY 12, 2020 — DECIDED JULY 13, 2

Before BAUER, KANNE, and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* J.S.T. Corporation, which is based
in Illinois, produces a type of electronic equipment called a
connector. Bosch, an engineering company, asked J.S.T. to de-
sign and manufacture a connector that Bosch could incorpo-
rate into a part that it builds for General Motors. For a time,
Bosch retained J.S.T. as its sole supplier of those connectors.
Then, according to J.S.T., Bosch wrongfully acquired J.S.T.'s

proprietary designs and provided them to J.S.T.'s competitors. The competitors used the stolen designs—allegedly with full knowledge of their provenance—to build their own knockoff connectors and eventually to displace J.S.T. from its role as Bosch's supplier.

After filing various lawsuits against Bosch, J.S.T. filed this suit in Illinois against the competitors, alleging misappropriation of trade secrets and unjust enrichment. The district court dismissed the case for lack of personal jurisdiction. The competitors' only link to Illinois is that they sell their connectors to Bosch, knowing that the connectors will end up in General Motors cars and parts that are sold in Illinois. For personal jurisdiction to exist, though, there must be a causal relationship between the competitors' dealings in Illinois and the claims that J.S.T. has asserted against them. Because no such causal relationship exists, we affirm the judgment of the district court.

I.

We draw the facts in this case from the well-pleaded allegations in J.S.T.'s complaint. *be2 LLC v. Ivanov*, 642 F.3d 555, 556 (7th Cir. 2011). And as we must for a case in this posture, we assume the truth of the facts that J.S.T. alleges. *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). What follows, then, is the story as J.S.T. tells it.

In 2005, General Motors retained engineering company Bosch to build a "body control module" for some of its cars. A body control module is essentially a computer system that controls certain electronic functions inside a car, like its locks and its power windows. To build the body control module, Bosch required a "183-pin connector"—an electrical adapter

that can connect 183 electrical circuits. Bosch turned to Illinois company J.S.T. Corporation for the task. J.S.T. accepted the contract and designed and built for Bosch a 183-pin connector. J.S.T.'s connectors performed well in Bosch's body control modules, and for years, Bosch retained J.S.T. as its sole supplier of the product.

Then Bosch took advantage of its relationship with J.S.T. Bosch tricked J.S.T. into handing over its proprietary design specifications and drawings for its 183-pin connectors, falsely representing that General Motors needed them and that Bosch would keep them confidential. Instead, Bosch gave those designs to some of J.S.T.'s competitors based in the United States and abroad, presumably hoping that the competitors could make an identical product more cheaply. The competitors accepted the wrongfully acquired designs with full knowledge of their source and then used those designs to produce their own knockoff 183-pin connectors. Upon learning what Bosch had done, J.S.T. stopped building 183-pin connectors for Bosch, and the competitors displaced J.S.T. from its role as Bosch's supplier.

J.S.T. filed several lawsuits against Bosch and the competitors. It first sued Bosch for misappropriation of trade secrets in Michigan, where Bosch is headquartered. That lawsuit remains pending. Next, J.S.T. sued Bosch and the competitors for patent infringement, both in Illinois and at the International Trade Commission. Those lawsuits are also ongoing. Finally, J.S.T. filed the present suit in Illinois against several of the competitors—TE Connectivity Corporation, known as TEC, and a group of related companies under the umbrella of Foxconn. The suit alleges misappropriation of trade secrets

under the Illinois Trade Secrets Act, 765 ILCS 1065/1, and un-just enrichment.

TEC and the Foxconn companies moved to dismiss for lack of personal jurisdiction. They emphasized that none of the defendants is headquartered in Illinois or has its primary place of business there. In fact, only two of the Foxconn companies even have an office in Illinois, and neither office is involved in producing the connector at issue. Further, none of the defendants manufactured the 183-pin connectors in Illinois, nor did they sell them in Illinois. Instead, they sold the connectors to Bosch in Texas and in China, where Bosch put them into body control modules that it sold to General Motors. The only relevant connection to Illinois is that General Motors incorporates some of those body control modules into cars and sets some aside to be sold as spare auto parts. General Motors then sells those cars and parts to authorized dealers for distribution nationwide, including in Illinois. The defendants argued that this connection is too attenuated to support personal jurisdiction over them. The district court agreed and dismissed the suit under Federal Rule of Civil Procedure 12(b)(2), holding that J.S.T. had failed to make a prima facie showing of facts that would support personal jurisdiction in Illinois. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). J.S.T. now appeals.

## II.

The federal district court's jurisdiction over J.S.T.'s state-law claims is circumscribed by both Illinois law and the U.S. Constitution. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *see* FED. R. CIV. P. 4(k)(1)(A). The parties agree that the Illinois long-arm statute, 735 ILCS 5/2-209(c), is coextensive with the Federal Constitution's Due Process Clause. *See*

*Matlin*, 921 F.3d at 705. We therefore ask only whether the exercise of jurisdiction comports with federal due process.

There are two types of personal jurisdiction: general and specific. General jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum state. *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). For a court to exercise general jurisdiction over an out-of-state defendant, the defendant's connection to the forum state must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). By contrast, specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (citation omitted). J.S.T. concedes that the defendants lack a sufficient relationship with Illinois to permit general jurisdiction. The only question before us is whether the district court had specific personal jurisdiction over this particular controversy.

J.S.T. contends that the defendants are subject to specific jurisdiction in Illinois because cars and parts containing their knockoff connectors are sold to consumers in Illinois. To make this argument, J.S.T. relies on the "stream of commerce" theory first articulated by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980), a case about personal jurisdiction over a products liability suit for personal injury. That theory posits that personal jurisdiction may be appropriate over "a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* Since *World-Wide Volkswagen*, the viability of the stream of

commerce theory has been uncertain; circuit courts have split on the issue and the Supreme Court has twice failed to resolve it conclusively. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).

J.S.T. is correct that our circuit is among those that apply the stream of commerce theory in products liability cases. In the absence of intervening guidance from the Supreme Court, we have reasoned that the Court adopted the stream of commerce theory in *World-Wide Volkswagen* and has not overruled it since. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946–47 (7th Cir. 1992); *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 & n.2 (7th Cir. 2004) (affirming *Dehmlow* while acknowledging that *Asahi* left the issue unresolved by the Supreme Court). On that basis, we have found personal jurisdiction in a products liability suit because a defendant sold fireworks to a middleman "with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce." *Dehmlow*, 963 F.2d at 947.

But J.S.T. fails to acknowledge that there is a reason why the stream of commerce theory is typically associated only with products liability suits. In the context of products liability, downstream sales to consumers can support personal jurisdiction because they bear on "the relationship among the defendant, the forum, and the *litigation*." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added) (citation omitted). Specific jurisdiction requires not only that a defendant establish minimum contacts with the forum state, but also that the litigation arise out of those contacts. *Lexington Ins. Co.*, 938 F.3d at 878. In a products liability suit, the underlying litiga-

tion alleges the development of a product that harms consumers. Thus, when a defendant takes steps to reach consumers in a forum state, it has created a relationship with the forum state that has special relevance to the litigation at issue. The stream of commerce theory contemplates that a defendant's product may go through middlemen before reaching consumers, but the point of consumer sale remains relevant to the relationship between the defendant, the forum, and the consumer-injury litigation.

But the point of consumer sale will not have the same relevance to specific jurisdiction in every suit. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." (citation omitted)). For the point of consumer sale to be as relevant to *this* litigation as it is to products liability suits, there must also be a connection here between downstream consumer sales and J.S.T.'s underlying claims. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 400–02 (7th Cir. 2020); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759 (7th Cir. 2010). If there is only an attenuated connection between J.S.T.'s claims and the downstream sales in Illinois, then these claims cannot be adjudicated in this forum. *See, e.g.*, *Matlin*, 921 F.3d at 706; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014).

The parties focus on J.S.T.'s claim that the defendants misappropriated J.S.T.'s trade secrets, so we'll begin there too. Unlike products liability, the tort of trade secret misappropriation is not intrinsically linked to interactions with a consumer. Trade secret law is not like trademark law, in which consumer confusion can be at the heart of the underlying

claim. *Cf. Curry*, 949 F.3d at 400–02. Nor is it like patent law, in which the sale of a patented invention to a consumer can be an act of infringement, even if the seller is unaware of the patent. 35 U.S.C. § 271(a); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011); *cf. Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975) (finding personal jurisdiction over a patent infringement claim on the basis of downstream sales). Instead, under Illinois law, trade secret misappropriation is the unauthorized acquisition, disclosure, or use of a trade secret by a person who knows or has reason to know that the secret was improperly acquired. 765 ILCS 1065/2(b).[1] The knowing acquisition, disclosure, and use of a secret are all actions that can be completed long before an offending product ever comes into contact with a consumer. And here, if the defendants knowingly acquired, disclosed, or used J.S.T.'s trade secrets anywhere, it was not in Illinois. They did not receive the stolen designs and drawings from Bosch in Illinois. They neither designed nor manufactured

---

[1] Both parties seem to agree that Illinois law governs J.S.T.'s claims. In our circuit, when neither party raises a conflict of law issue in a diversity case, a federal court should apply the law of the state in which it sits. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998). Thus, we too analyze J.S.T.'s claims under Illinois law—although we might have proceeded differently if the parties had disagreed about which state's law applied. *Cf. Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 879 (7th Cir. 2004) ("[T]he Illinois choice of law rule applicable to misappropriation cases (and it is Illinois's choice of law rules that apply to the misappropriation claim in this case because Illinois is the forum state) selects the place where the misappropriation took place or the defendant obtained the benefit of the misappropriation, the latter being the state or other jurisdiction in which the defendant has its principal place of business." (emphasis removed)).

their knockoffs in Illinois. And assuming that the defendants' sale of their connectors counted as a "use" of a trade secret, the defendants only sold their products to Bosch at its facilities in Texas and China. Bosch then sold the products to General Motors, which sold to consumers in Illinois and elsewhere.[2] Because the defendants themselves did not acquire, disclose, or use J.S.T.'s trade secrets in Illinois, the link between the Illinois sales and their misappropriation of J.S.T.'s trade secrets is attenuated.

J.S.T.'s attempt to tighten that link fails to persuade us. J.S.T. contends that consumer sales in Illinois bear on trade secret misappropriation just as they bear on products liability suits for personal injury. Its argument proceeds in two steps. First, J.S.T. posits that a contact—here, downstream sales—is relevant to the underlying claim if it tracks one of the "elements" of the claim that "establish liability." *See Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570 (7th Cir. 1986). Second, it notes that Illinois courts have said, "[T]he three elements of trade secret misappropriation … are: (1) a trade secret existed; (2) the secret was misappropriated …; and (3) the owner of the trade secret was damaged by the misappropriation." *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 925 (Ill. App. Ct. 2005) (citation omitted). J.S.T. contends that the downstream consumer sales in Illinois damaged its bottom line, thereby satisfying the third element of the tort. And, J.S.T. says, a state in which an element of a tort is satisfied necessarily has a close relationship to litigation concerning that tort.

---

[2] General Motors is not a defendant in this suit, and J.S.T. does not allege that General Motors knew or had reason to know of the improper acquisition of J.S.T.'s trade secrets. *See* 765 ILCS 1065/2(b).

While clever, this argument has problems. To begin with, J.S.T.'s focus on the damages element is in tension with the admonition in *Walden* that "it is the *defendant's* conduct," not the plaintiff's injury, "that must form the necessary connection with the forum State." 134 S. Ct. at 1122 (emphasis added). It is true that courts look to the elements of a tort in determining whether a plaintiff's claims arise out of a defendant's contacts. *Id.* at 1124; *Young*, 790 F.2d at 570. And here, J.S.T. is right that damage to the plaintiff is an element of the tort of trade secret misappropriation. (That's hardly surprising, given that harm to the plaintiff is a classic element of every tort.) But our interest in the elements of a tort is not a mechanical scan for anything that courts label an "element." Instead, we consider the elements of the underlying tort for the light that they cast on "the relationship between the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (citation omitted). In that inquiry, our core focus is always on the defendants' conduct, not the plaintiff's damages. J.S.T. therefore has framed the issue incorrectly. Contrary to its argument, the fact that damages are an element of the alleged tort does not necessarily mean that personal jurisdiction exists in any state where that element is satisfied.

When we put the focus where it should be—on the defendants' conduct—it becomes clear why J.S.T.'s argument fails. The defendants harmed J.S.T. both by illicitly using J.S.T.'s designs to turn a profit and by displacing J.S.T. as Bosch's supplier. Both harms flowed from the defendants' sales to Bosch, which were the source of the defendants' ill-gotten gains, as well as the reason for J.S.T.'s lost opportunity. General Motors' sales to Illinois consumers are relevant only insofar as demand for General Motors' cars helped drive de-

mand for Bosch parts, and, in turn, for the defendants' connectors. But Illinois consumers have virtually nothing to do with the defendants' interactions with Bosch, which are the foundation of J.S.T.'s trade secret claim. Because the downstream sales to Illinois consumers have only an attenuated relationship to this litigation, those sales do not entitle Illinois courts to adjudicate the defendants' liability for misappropriating J.S.T.'s drawings.

J.S.T. raised another claim in its complaint: unjust enrichment.[3] But the sales to consumers in Illinois are not sufficient to establish personal jurisdiction for this claim either. If the defendants had made money in Illinois from J.S.T.'s drawings, then we might be able to conclude that J.S.T.'s unjust enrichment claim arose from those downstream sales. But the defendants were not enriched by those sales. The enriching sales were the defendants' sales to *Bosch*, which took place at Bosch's locations in China and Texas. The connection between J.S.T.'s unjust enrichment claim and the downstream sales in Illinois of General Motors products is thus too attenuated to support personal jurisdiction over the defendants. Neither of J.S.T.'s claims arise out of the defendants' contacts in Illinois, so the district court's dismissal for lack of personal jurisdiction is AFFIRMED.

---

[3] The district court dismissed this case for lack of personal jurisdiction without addressing the merits of J.S.T.'s claims. To avoid resolving an issue not passed on by the district court, we do the same. We have doubts, however, about whether J.S.T. has stated a discrete claim of unjust enrichment, given that the Illinois Trade Secrets Act displaces common-law unjust enrichment claims based on the misappropriation of trade secrets. 765 ILCS 1065/8; *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 619 (Ill. App. Ct. 1998).