In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1024

B.D. a minor, by and through
his guardian ad litem, BRYAN MYER,

*Plaintiff-Appellee,*

*v.*

SAMSUNG SDI CO., LTD.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:22-cv-00107 — **James R. Sweeney II**, *Judge.*

———————————

ARGUED NOVEMBER 15, 2023 — DECIDED JANUARY 24, 2024

———————————

Before SYKES, *Chief Judge*, and BRENNAN and LEE, *Circuit Judges*.

PER CURIAM. B.D. suffered severe burns when a Samsung SDI battery exploded in his pocket in Indiana. So, B.D. sued Samsung SDI in Indiana state court. Samsung SDI removed the case to federal court and moved to dismiss for lack of personal jurisdiction. The district court found jurisdiction, and this interlocutory appeal followed. Because there are

insufficient facts to determine whether personal jurisdiction exists over Samsung SDI, we remand for further jurisdictional discovery.

## I

We take the facts from the well-pleaded allegations in B.D.'s complaint and the declarations submitted by both parties. *E.g.*, *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). We accept those facts as true and resolve any factual disputes in B.D.'s favor, as we must for a case in this posture. *Id.*

Samsung SDI is a corporation organized under the laws of the Republic of Korea with its headquarters and principal place of business there. It has no offices, warehouses, other places of business, employees, or agents in Indiana. The corporation is not licensed or registered to do business in any state of the United States, including Indiana.

It sells tens of millions of batteries each year to distributors, which incorporate them into consumer goods and deliver them to retailers. Those distributors are located throughout Asia, Europe, and North America, but none are in Indiana. Some of Samsung SDI's sales through distributors are to manufacturers of battery packs and other components. Battery-pack manufacturers combine certain batteries into a single pack with an exterior case and an integrated circuit board. The manufacturers then incorporate the pack into a product, such as a power drill or laptop computer, later sold to consumers. For sales through distributors to component manufacturers, Samsung SDI also understands that its batteries are eventually encased within a battery pack and incorporated into consumer products.

One kind of battery sold and manufactured by Samsung SDI is the 18650 lithium-ion battery, alleged to have caused B.D.'s injuries. These batteries look like a common AA battery, but they are rechargeable and hold more power.

Samsung SDI maintains that it does not sell 18650 batteries to individuals. It does not design or market 18650 batteries to be used individually (that is, not encased in a battery pack). It does not advertise or market 18650 batteries to consumers in Indiana. And it has never personally or directly shipped an 18650 battery to an Indiana address. 18650 batteries are, however, commonly found in Indiana, arriving in battery packs within consumer goods. Indiana consumers can also buy individual 18650 batteries online and in retail stores from third-party retailers.

Samsung SDI is aware of a particular danger associated with individual consumer's use of lithium-ion batteries in e-cigarettes. If functioning correctly, an 18650 battery powers a heating element inside the e-cigarette to produce vapor that the user inhales. But as alleged in the complaint, if the device malfunctions, the battery can be "shot out like a bullet or rocket." That malfunction is especially dangerous because an e-cigarette is a consumer product often kept near a person's body.

To address this danger, every potential distributor for Samsung SDI must apply to purchase its batteries. The corporation will not approve a sale if the application reveals a connection between that distributor and other distributors or vendors in the e-cigarette industry. Samsung SDI also warns consumers on its website not to remove 18650 batteries from a battery pack or otherwise use an individual 18650 battery. In addition, Samsung SDI includes a specific warning

in its product-specification documents stating that its batteries are not designed for use in e-cigarettes.

In 2019, Bryan Myers purchased a Samsung SDI 18650 lithium-ion battery to use in an e-cigarette. He bought the individual battery at a retail e-cigarette store in Indiana. The record does not reveal how the store obtained the battery, but Samsung SDI avers it "never conducted any business with any retail store in Indiana." Shortly after purchase, Myers gave the battery to his stepson, B.D. At some point while the battery was in B.D.'s pocket, it exploded. B.D. suffered severe burns.

B.D., through Myers, brought a product liability suit against Samsung SDI in the Circuit Court of Knox County, Indiana. Samsung SDI removed the case to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441(b). Samsung SDI then moved to dismiss the complaint for lack of general and specific personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). The district court denied Samsung SDI's motion to dismiss. The sole issue before the district court was whether specific (not general) personal jurisdiction existed. The district court found that Samsung SDI has sufficient contacts with Indiana to permit the exercise of specific personal jurisdiction over B.D.'s claims; that a sufficient nexus exists between Samsung SDI's marketing of the 18650 lithium-ion battery in Indiana and B.D.'s alleged injuries; and that exercise of specific personal jurisdiction over Samsung SDI would not offend traditional notions of fair play and substantial justice. This interlocutory appeal followed. *See* 28 U.S.C. § 1292(b).

**II**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of making a prima facie case that jurisdiction exists. *See Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1163–64 (7th Cir. 2015); *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

The district court's jurisdictional decision is reviewed de novo. *Matlin*, 921 F.3d at 704. As a diversity case, our jurisdiction is circumscribed by Indiana law and the U.S. Constitution. *Id.* at 705; *see* FED. R. CIV. P. 4(k)(1)(A). Indiana's equivalent of a long-arm statute, Indiana Trial Rule 4.4(A), applies, *see Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004), and is coextensive with the U.S. Constitution's Due Process Clause. *See Boyer v. Smith*, 42 N.E.3d 505, 509 (Ind. 2015). Accordingly, we ask whether the exercise of jurisdiction comports with federal due process.

The sole question is whether the district court has specific personal jurisdiction over Samsung SDI; here, there is no general personal jurisdiction. Specific personal jurisdiction rests on "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (cleaned up). For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to

the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *E.g., Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

For purposeful availment, the defendant must have "certain minimum contacts" with the forum state. *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Requiring minimum contacts protects the defendant from the burden of litigating in a distant, inconvenient forum, as well as to prevent states from reaching beyond the limits of their sovereignty. *See id.*

A defendant's minimum contacts may be established through the "stream-of-commerce" theory. The Supreme Court first articulated this theory in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980). There, the Court explained jurisdiction may be appropriate over a defendant "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298. A defendant's "awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987). The keys are the defendant's actions and expectations.

Our circuit is among those that apply the stream-of-commerce theory in products liability cases. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946–47 (7th Cir. 1992); *see also Jennings*, 383 F.3d at 550 & n.2 (affirming *Dehmlow* while acknowledging that the Supreme Court left the issue

unresolved in *Asahi*). We apply a "knowledge" version of the stream-of-commerce theory, rather than a "targeting" version. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575–76 (7th Cir. 2020); *compare Asahi*, 480 U.S. at 117 (Brennan, J., concurring) (under the stream-of-commerce theory, personal jurisdiction over a participant is proper if the participant is aware that the final product is marketed in the forum state) *with J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality opinion) (requiring, for personal jurisdiction based on the stream of commerce, that the defendant "can be said to have targeted the forum"). Under the knowledge version, "[a]s long as a participant in [the stream of commerce] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117 (Brennan, J., concurring).

Next, for relatedness, we must assure ourselves "that the defendant's minimum contacts with the forum state [are] 'suit-related.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (emphasis omitted) (quoting *Advanced Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). Direct sales from the defendant in the forum state involving the infringing product satisfy this requirement. *Curry*, 949 F.3d at 401–02.

As the Supreme Court recently clarified, a defendant's contacts with the forum may "relate to" the plaintiff's claims even in the absence of a "strict causal relationship" between the contacts and claims. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ---, 141 S. Ct. 1017, 1026 (2021). Due process requires only that the "'relationship among the defendant, the forum[s], and the litigation' [] [be] close enough to support

specific jurisdiction." *Id.* at 1032 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). That is to say, we ensure that the conduct and the litigation are related. *See id.* at 1031. But when there is "no such connection [between the forum and the particular claims at issue], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264.

Last, for fairness, we look to several factors, including the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### III

The district court relied primarily on the stream-of-commerce theory and *Ford* to find specific personal jurisdiction in this case. But the record does not contain sufficient facts to assess whether the requirements of the stream-of-commerce theory are met here, and *Ford* is distinguishable.

### A. Purposeful availment

Samsung SDI does not have a physical presence in Indiana. Still, under our circuit precedent, that is not necessary for a defendant to have sufficient minimum contacts with a forum state. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–58 (7th Cir. 2010). For example, if a corporation maintains "commercial websites through which customers could purchase [the corporation's products], calculate their

shipping charges using their zip codes, and create accounts," *id.*, this requirement can still be satisfied.

So, we consider Samsung SDI's other contacts with Indiana. First, the parties agree that Samsung SDI sells some batteries—but not 18650 batteries—directly to Indiana utility companies for use in power grids. To B.D., that constitutes sufficient contacts for jurisdiction in this suit. Though these contacts satisfy purposeful availment, as discussed below, they cannot satisfy relatedness, as B.D.'s claim does not arise out of or relate to those batteries.

Second, Samsung SDI sells 18650 batteries to Indiana consumers through third-party websites and vendors. The parties agree that the 18650 battery here was sold at an Indiana store through a third-party vendor. But the extent of Samsung SDI's purposeful availment to Indiana is unclear.

Jurisdiction under this stream-of-commerce theory turns on Samsung SDI's knowledge and expectations. The extent of minimum contacts depends on whether the corporation delivered its product into the stream of commerce in the U.S. market with the expectation that the 18650 batteries would be purchased in the forum state. This raises several factual questions:

- Did Samsung SDI know individual 18650 batteries reached consumers in Indiana?

- Did Samsung SDI expect that its 18650 batteries would reach consumers in Indiana?

- What if any efforts did Samsung SDI make to control distribution of its 18650 batteries?

Evidence on these and related questions would help resolve whether Samsung SDI delivered the 18650 batteries into the stream of commerce in the U.S. market with the expectation that they would be purchased in Indiana.

Next, we consider Samsung SDI's potential contacts with Indiana from the sale of 18650 batteries to Indiana consumers through third-party websites and vendors. On this topic, the district court relied primarily on *Ford*. The court found, like Ford, that Samsung SDI had sufficient contacts with Indiana.

In *Ford*, two plaintiffs, both forum state residents, were injured in vehicles manufactured by Ford. 141 S. Ct. at 1022. The plaintiffs brought a products liability suit in the states where they were injured. *Id.* Ford argued that the states lacked personal jurisdiction because Ford did not sell the specific vehicles involved in the accidents in the states where they occurred and where plaintiffs sued. *Id.* But despite not selling the vehicles involved in the accident in the forum state, Ford conducted business by, "among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective." *Id.*; *see id.* at 1027–29.

*Ford* is distinguishable. The record does not show that Samsung SDI advertised, sold, or serviced 18650 batteries in Indiana. While B.D. alleges Samsung SDI sells 18650 batteries to Indiana consumers through third-party websites and vendors, what Samsung SDI knew or expected about the 18650 batteries entering Indiana is unclear. Again, addressing this question would help decide whether specific personal jurisdiction exists here over Samsung SDI.

### B. Relatedness

Assuming Samsung SDI has sufficient minimum contacts with Indiana, we consider whether those contacts are related to the alleged injury. First, Samsung SDI's contacts selling batteries other than the 18650 model to utilities in Indiana are unrelated to the alleged injury. These contacts do not arise out of or relate to the underlying suit. *Curry*, 949 F.3d at 400; *Advanced Tactical*, 751 F.3d at 801; *see also Ford*, 141 S. Ct. at 1026. So, they cannot sustain specific personal jurisdiction.

Second, on the sale of 18650 batteries to third-party retailers, B.D. claims that the product ultimately sold through the stream of commerce caused his injuries. There may necessarily be a relation between those contacts and his injury. *See JST Corp*, 965 F.3d at 576–77. But we hesitate to reach this conclusion at this point. Jurisdictional discovery could yield facts as to whether Samsung SDI's contacts with Indiana are related to the injury.

### C. Fairness

We look at the several factors discussed above to assess fairness. *E.g.*, *Burger King*, 471 U.S. at 477; *Purdue Rsch.*, 338 F.3d at 781. To gauge the burden on Samsung SDI to defend in Indiana, more facts are required, such as the extent of Samsung SDI's business in Indiana. Indiana has a strong interest in providing a forum to its residents to seek redress for harm suffered in the state by out-of-state actors. *Burger King*, 471 U.S. at 473–74 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see N. Tex. Steel Co. v. R.R. Donnelley & Sons Co.*, 679 N.E.2d 513, 519 (Ind.

Ct. App. 1997). And the efficiency and shared state interest factors may favor finding specific personal jurisdiction. If Samsung SDI is correct, no court in the U.S. may have jurisdiction over the corporation for these types of explosions. Additional facts are necessary to answer this fairness question.

*        *        *

Given this evaluation, we consider whether jurisdictional discovery would help. Such discovery is proper if a plaintiff establishes a colorable or prima facie showing of personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 876 (7th Cir. 2006). To decide whether a plaintiff has satisfied that minimal burden, this court "consider[s] the record in its entirety and draw[s] all inferences in [the plaintiff's] favor," while bearing in mind the fact that, without discovery, "it is not surprising that [the plaintiff] can do little more than suggest that [a defendant] currently has minimum contacts." *Id.* at 878.

On this record, and drawing all inferences in the plaintiff's favor, B.D. has offered a colorable showing of Samsung SDI's minimum contacts, which warrants a limited remand for jurisdictional discovery. B.D. has alleged that Samsung SDI put its 18650 batteries into the stream of commerce with the intent and knowledge that they would reach Indiana.

**IV**

We REMAND for further jurisdictional discovery. Specifically, the district court should permit discovery about Samsung SDI's contacts with Indiana concerning B.D.'s claimed injuries. This remand is limited to the question of personal jurisdiction and does not independently obligate the

district court to consider or reconsider any non-jurisdictional issues.